```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

DAILY ACCESS CORPORATION,        *
                                 *
     Plaintiff,                  *
                                 *
vs.                              *  CIVIL ACTION NO.12-00217-KD-B
                                 *
                                 *
GAEDEKE HOLDINGS, LTD.,          *
                                 *
     Defendant.                  *
```

## Report and Recommendation

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or In The Alternative Motion to Transfer Venue (Doc. 3). The motion has been fully briefed, and is ripe for resolution. Upon review of the referenced motion, supporting briefs and materials, and Plaintiff's brief and materials in opposition thereto, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED.**

   I.   BACKGROUND FACTS

Plaintiff Daily Access Corporation ("Daily Access") is an Alabama corporation with its principal place of business in Mobile, Alabama. (Doc. 1-2 at 2). Gaedeke Holdings, Ltd. ("Gaedeke") is a limited Texas partnership with its principal

1

place of business in Dallas, Texas.[1] (Doc. 3-2 at 1). Gaedeke and Leggette & Company, Inc. ("Leggette"), a Texas entity, entered into a leasing agreement in 1996 whereby Gaedeke agreed to lease to Leggette office space located in Dallas, Texas. (Doc. 1-2 at 1). The original lease agreement was amended in 1998 and 2003, and has an expiration date of September 30, 2014. (Id. at 3). The lease agreement also provides that Texas law will control any disputes regarding interpretation of the agreement. (Id. at 19). In addition, the lease agreement contains an assignment provision. Pursuant to the assignment provision, Leggette and Plaintiff Daily Access negotiated and entered into an Assignment and Assumption of the Lease ("the Assignment"), whereby Dailey Access became the successor-in-interest tenant in place of Leggett, effective on August 14, 2009. (Id. at 3). Subsequent thereto, the assignment was approved by Gaedeke. (Id.).

Daily Access filed suit in the Circuit Court of Mobile County, Alabama against Gaedeke in February 2012. (Doc. 1-2). In the Complaint, Dailey Access seeks a declaration that it had a right to terminate the lease with Gaedeke prior to its September 30, 2014 expiration date. (Id.). On March 27, 2012,

---

[1] Gaedeke Investments, Inc. is the sole general partner of Gaedeke Holdings, Ltd. Gaedeke Investments, Inc. is a Texas corporation and has its principal place of business in Dallas, Texas.

Gaedeke filed a Notice of Removal (Doc. 1), and removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441(b).

Defendant Gaedeke, on April 4, 2012, filed the instant Motion to Dismiss or In The Alternative Motion to Transfer Venue to the Northern District of Texas (Doc. 3). Defendant contends that this Court does not have personal jurisdiction over it because Gaedeke does not have systematic and continuous business contacts with Alabama so as to support a finding of general jurisdiction. Specifically, Gaedeke points out that:

> Gaedeke is a Texas limited partnership. It has no offices in Alabama. It is not registered to do business in Alabama. It has no telephone service in Alabama. It has no address in Alabama. It has no employees or other representatives in Alabama. It does not advertise in Alabama or solicit business from Alabama. It has not been involved in litigation in Alabama and has not purposefully availed itself of the courts of Alabama. It does not own any property, real or personal, in Alabama.

(Doc. 3-2 at 1).

Defendant also argues that specific jurisdiction is lacking as well. In support of this contention, Defendant contends that it does not have sufficient minimum contacts with the State of Alabama to support the Court's exercise of personal jurisdiction over it. (Doc. 3-1). Defendant further avers that "Gaedeke has no relevant contacts with this venue other that the fact

3

that it is the owner of a property in Dallas, Texas, that an Alabama company [Daily Access], leases from it pursuant to a lease assignment from the original [Texas] tenant." (Id.).

Plaintiff Daily Access filed a Response in Opposition to Defendant's Motion to Dismiss or Transfer Venue (Doc. 8). In the response, Plaintiff concedes the absence of general jurisdiction, but maintains that Gaedeke has sufficient minimum contacts to support a finding of specific jurisdiction in this case. According to Plaintiff, Gaedeke consented to the Assignment "knowing that Daily Access was an Alabama Corporation," that Gaedeke "accepted monthly rental payments sent . . . from Daily Access' Alabama address," and that Gaedeke participated in telephone calls relating to the approval of the Assignment and maintenance of the rental property. (Id.). Plaintiff further notes that some of the telephone calls between its employees and Gaedeke's staff originated in Alabama and others in Texas, and that the length of the lease, i.e. sixty months, establishes an ongoing business relationship sufficient to alert Gaedeke that it could be haled into court in Alabama. (Id.).

## II. ANALYSIS

Rule 12 of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of personal jurisdiction by motion. FED. R. CIV. P. 12(b)(2). "As a general rule, courts

should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997)(internal citations omitted).

The plaintiff "has the burden of establishing a prima facie case of personal jurisdiction." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). The plaintiff meets his burden of setting up a prima facie case if it "presents enough evidence to withstand a motion for directed verdict." Id. (internal quotation omitted). When a "defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." Id. When a plaintiff's "complaint and supporting affidavits and documents conflict with the Defendants' affidavits," the court "must construe all reasonable inferences in favor of the plaintiff." Id.

In reviewing a challenge to personal jurisdiction, the court must undertake a two-part analysis. The court must evaluate its jurisdiction under the state long-arm statute and

then determine whether jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Cable/Home Communication Corp. v. Network Productions, Inc., 902 F. 2d 829, 855-56 (11th Cir. 1990). In Alabama, the limits of long-arm jurisdiction are coextensive with due process under the federal constitution; thus, the court need undertake only one analysis. Rule 4.2, Ala. R. Civ. P.[2]; Frye v. Smith, 67 So. 2d 882 (Ala. 2011); see also Clark v. Deal, 2009 U.S. Dist. LEXIS 26420 (M.D. Ala. Mar. 1, 2009).

The due-process inquiry has two requirements. The defendant must have sufficient "minimum contacts" with the forum State. International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). In addition, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." Id.

There are two types of personal jurisdiction: "general" and "specific." There is general personal jurisdiction over a party

---

[2] Alabama's long-arm statute provides, in part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . .

Ala. R. Civ. P. 4.2(b) (Effective August 1, 2004).

when "the cause of action does not arise out of . . . the [party's] activities in the forum State," but there are "continuous and systematic" contacts between the two. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction is based on the party's contacts with the forum State that are related to the cause of action. Id. at 414 n.8.  In this case, there is no allegation that Gaedeke has had general contacts with Alabama unrelated to this lawsuit.  Thus, the only issue is whether asserting specific personal jurisdiction over Gaedeke comports with due process.

For specific personal jurisdiction, the contacts at issue must satisfy the minimum-contacts test. "Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that "[it] should reasonably anticipate being haled into court there." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996)(citations omitted).

The minimum-contacts analysis is related to the requirement of the Due Process Clause that "individuals have fair warning

7

that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citations omitted). This is because a defendant who has "purposefully directed" his activities at residents in the forum, such that litigation results from alleged injuries that arise out of or relate to those activities," can expect to be liable to suit in that forum. Id.; see also Goodyear Tires Operations v. Brown, 131 S. Ct. 2846, 2854, 180 L. Ed. 2d 796 (2011) (the court must determine whether the defendant engaged in "some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws).

In the instant case, Defendant Gaedeke avers that Plaintiff Daily Access has failed to proffer facts establishing sufficient minimum contacts with Alabama to support a finding of specific jurisdiction. (Doc. 3). Gaedeke contends that it has not "purposefully availed" itself of the protections of Alabama law and, in fact, did not seek to do business with Plaintiff, an Alabama citizen. (Id.). Defendant further proffers that none of its agents have ever traveled to Alabama in connection with the Lease Assignment. (Id.). These contentions shift the burden to Plaintiff to present facts sufficient to establish the

8

basis for the existence of jurisdiction. Future Tech Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).

In response, Plaintiff asserts four grounds to satisfy the constitutional minimum contacts requirement: (1) Gaedeke's approval of the Assignment of the lease from Leggette to Plaintiff with the knowledge that Plaintiff is an Alabama Corporation, (2) Gaedeke's acceptance of rental payments from Plaintiff's Alabama address, (3) telephone calls between the parties originating from Alabama, and (4) an ongoing business relationship between the parties as evidenced by the length of the parties' Lease agreement. (Doc. 8).

The undersigned finds that the information alleged by Plaintiff is insufficient to support a finding of specific jurisdiction in this case. While Plaintiff focuses on the number of contacts that Gaedeke had with Alabama as a result of its dealings with Plaintiff, the proper focus for due process is whether the nature and quality of Gaedeke's contacts represent an effort by Gaedeke to "purposefully avail[]" itself of the privilege of conducting activities within the forum State. Goodyear, 131 S. Ct. at 2854. This is not a mechanical analysis but, instead, requires the court to realistically analyze Gaedeke's contacts with Alabama. See Burger King, 471 U.S. at 478 (noting that the Supreme Court has rejected "mechanical

9

tests" and has emphasized the need for a "highly realistic" approach).

In this case, the evidence demonstrates that Gaedeke initially entered into a lease agreement with a Texas entity for office space that Gaedeke owned in Dallas Texas, that Gaedeke did not advertise in Alabama or seek an Alabama resident to lease the property, that Gaedeke did not participate in the negotiations between Leggette, the original tenant and Plaintiff, the successor tenant, and that Gaedeke merely approved the assignment which was negotiated between Plaintiff and Leggette.  These facts do not realistically suggest that Gaedeke purposefully availed itself of the privilege of conducting activities in Alabama.  There is no evidence that Gaedeke had any contact with Alabama other than the rental contract that arose when the original lessor assigned its rights to Plaintiff.  Further, there is no evidence that Gaedeke was ever physically present in Alabama.  Although physical presence within the forum is not required, the lack of physical presence is a relevant consideration.  <u>Burger King</u>, 471 U.S. at 476.  It is also noteworthy that the property at issue is located in Texas, and that the parties' lease agreement contains a choice of law provision that establishes Texas law as controlling.

Plaintiff argues that Gaedeke should have anticipated being haled into an Alabama Court because the parties' agreement

10

was to span over sixty months, and thus created an ongoing relationship between the parties. In support of its contention, Plaintiff points to the Alabama Supreme Court's ruling in Corporate Waste Alternatives, Inc. v. McLane Cumberland, Inc., 896 F.2d 410 (Ala. 2004). In Corporate Waste, the plaintiff, an Alabama corporation, initiated contact with a Texas Corporation to provide waste management services at the defendant's Kentucky facility. Id. The parties entered a ten year contract, and the Texas corporation mailed payments to the plaintiff corporation located in Alabama. Later, the Texas corporation terminated the contract, and the plaintiff corporation filed suit in Alabama. The trial court granted the Texas corporation's motion to dismiss for lack of jurisdiction; however, on appeal, the Alabama Supreme Court reversed and held that it was "fair and reasonable" to require the Texas corporation to come to Alabama to defend its actions. Id., 896 So.2d at 416. In reaching its decision, the Court noted that the parties' contract contained a provision that established Alabama law as controlling, that the contract had been faxed to the plaintiff corporation in Alabama for execution, that the defendant mailed payments to the plaintiff corporation in Alabama, and that the parties' ten year contract created an ongoing relationship between the parties such that the defendant Texas corporation should have anticipated be haled into court in Alabama.

11

The instant case is clearly distinguishable from the Corporate Waste decision.  First, the instant case involves the lease of real property that is located in Texas.  Moreover, unlike the contract in the Corporate Waste case, the parties' agreement in this case provides that Texas law, as opposed to Alabama law, is to control.  Additionally, Gaedeke did not mail payments to Alabama.  Instead, Plaintiff sent the rental payments to Gaedeke in Texas.  These facts are more akin to those addressed by the Court in My Favorite Year, Inc., v. Kiosk Bldg. Assocs., L.P., 1991 U.S. Dist. LEXIS 2730 (E.D. La. Mar. 4, 1991).  Kiosk involved a Louisiana corporation that leased retail space in Virginia and Maryland from a Virginia limited partnership.  The Louisiana corporation sued the defendant-lessor in Louisiana for breaches of the leases, and the defendant moved to dismiss for lack of personal jurisdiction.  The defendant-lessor argued that its only contacts with Louisiana related to the administration of the leases.  In granting the defendant's motion, the court held that:

> It is impossible for this Court to fathom how, by virtue of sending invoices or allowing a lessee's books to be kept in Louisiana, it could be said that [defendant] has "purposefully availed" itself of conducting *activities* within Louisiana or that [defendant] has therefore "invoked the benefits and protections of the laws of Louisiana."  This argument rings particularly hollow in light of the fact that the contract which provides the basis

12

> of this suit looks to Virginia law for interpretation. This "continuing obligation" between [plaintiff] and [defendant], which plaintiff claims gives rise to the jurisdiction of this Court, is not shielded by Louisiana law, nor has it any substantial connexity with this state.

Kiosk, 1991 U.S. Dist. LEXIS 2730 (emphasis in original); see also Payless Shoesource, Inc. v. Joye, 2012 U.S. Dist. LEXIS 24817, *11-12 (D. Kan. Feb. 27, 2012)(in finding the absence of personal jurisdiction, the court observed that "[the plaintiff] essentially asks this court to find personal jurisdiction over a lessor in any district in which the lessee resides regardless of where the property is located, the law that governs the contract and who solicited the relationship.  This essentially reduces the 'minimum contacts' analysis to whether the parties entered a contract, which the Supreme Court has rejected. . . .") Accordingly, based on the circumstances of this case, the undersigned finds that Gaedeke lacks minimum contacts with Alabama.  Simply put, consenting to the assignment of a lease for office space located in Texas, engaging in telephone calls originating in and out of Alabama, and accepting payments from a entity located in Alabama is not sufficient because under the circumstances, where Texas law controls and the real property is located in Texas, Gaedeke could not have reasonably anticipated being haled into an Alabama Court.  Further, giving the attenuated contacts, subjecting Gaedeke to suit in Alabama

13

under the circumstances of this case does not comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co., 362 U.S. at 316.  Plaintiff has not met its burden of demonstrating that the exercise of personal jurisdiction over Gaedeke in Alabama would be constitutionally permissible; thus, this action should be dismissed for want of jurisdiction.

### III. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** without prejudice.[3]

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **6th** day of **December, 2012.**

               /s/ SONJA F. BIVINS
              **UNITED STATES MAGISTRATE JUDGE**

---

[3] Although Defendant requested that this case be transferred in the event its Motion to Dismiss was denied, Plaintiff has not requested that this action be transferred in the event personal jurisdiction is lacking.  To the extent Plaintiff desires to have this action transferred, rather than dismissed, it shall include said request in any objections filed with the Court. See Trujillo v. Williams, 465 F.3d 1210, 1222 (10th Cir. 2006)("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice.").

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4]   Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.